**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

------------------------------------- X
                    :

JOSEPH FUSCO,               :

          Plaintiff,      :    **Civil Action No. 2:17-cv-00036-MSG**

                    :

    - vs. -           :

UBER TECHNOLOGIES, INC., RASIER-PA, :
LLC, 39th & SANSOM STREETS CORP. t/a :
CAVANAUGH'S, and MAJOR, C. FULLER, :

          Defendants.    :
                    :
------------------------------------- X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT UBER TECHNOLOGIES, INC.'S AND RASIER-PA, LLC'S**
**MOTION TO DISMISS, OR IN THE ALTERNATIVE TO STRIKE CERTAIN**
**<u>ALLEGATIONS WITHIN, THE AMENDED COMPLAINT</u>**

Dated: October 12, 2018

Matthew A. Luber, Esq.
PA ID # 309323
R. Armen McOmber, Esq
Admitted *pro hac vice*
Christian V. McOmber, Esq.
Admitted *pro hac vice*
McOMBER & McOMBER, P.C.
30 S. Maple Avenue
Marlton, NJ 08053
Email: mal@njlegal.com
Phone: 856-985-9800
Fax:  732-530-8545
*Attorney for Plaintiff Joseph Fusco*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

I.      INTRODUCTION. ........................................................................................... 1

II.     BACKGROUND ............................................................................................. 2

III.    LEGAL STANDARD ...................................................................................... 3

IV.     ARGUMENT ................................................................................................... 3

   A.   Plaintiff Has Properly Pleaded His Negligence Claims. ......................................... 3

          1.   As an Initial Matter, Uber Does Not Address Plaintiff's Negligent
               Training Claims or His Claim Uber Failed to Exercise Care When Matching
               Drivers with Consumers ............................................................................. 4

          2.   Plaintiff Pleaded Specific Instances of Past Misconduct Pertaining to
               the Uber Driver, Defendant Fuller. .............................................................. 6

   B.   Uber's Fraudulent Representations Are Not "Puffery." ...................................... 10

   C.   The McKnight Settlement Has No Bearing on This Case. ..................................... 13

          1.   Rule 12(b)(6) Precludes Uber's Use of Documents Outside the
               Pleadings ................................................................................................... 13

          2.   The McKnight Settlement Has Not Been Approved by the District
               Court and the Matter Has Been Stayed ....................................................... 14

          3.   Even if the Settlement is Approved, the Claims Asserted in *This* Case
               Will Not Be Released and Are Specifically Excluded .............................. 15

          4.   The Notice Presents Serious Due Process Concerns .................................. 17

          5.   Given that Plaintiff Was Not Provided Actual Notice, and that Uber
               Litigated this Matter for 21 Months Without Mentioning the McKnight
               Matter, Plaintiff Is Filing a Motion for Leave to Opt Out of the Class Action
               Settlement or Alternatively Enlarge the Time to Opt Out ......................... 19

   D.   The Pleadings Do Not Implicate Rule 12(f). ....................................................... 22

V.      CONCLUSION ............................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

ALA, Inc. v. CCAIR, Inc.,
   29 F.3d 855 at (3d Cir. 1994) ................................................. 3

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ................................................. 6

Bell Atlantic v. Twombly,
   550 U.S. 544 (2007) ................................................. 3

Belmont v. MB Inv. Partners, Inc.,
   708 F.3d 470 (3d Cir. 2013) ................................................. 3, 6, 10

Camesi v. Univ. Of Pittsburgh Med. Ctr., No. 09-cv-85,
   2009 U.S. Dist. LEXIS11272 (W.D. Pa. Dec. 1, 2009) ..................... 20

Carcaise v. Cemex, Inc.,
   200 Fed. Appx. 116 (3d Cir. 2006) ................................................. 16

Castrol Inc. v. Pennzoil Co.,
   987 F.2d 939 (3d Cir.1993) ................................................. 10, 12

Christopher v. First Mut. Corp.,
   No. 05-01159, 2006 WL 166566 (E.D. Pa. Jan. 20, 2006) ................. 10

City of Philadelphia v. Beretta U.S.A. Corp.,
   277 F.3d 415 n.9 (3d Cir. 2002) ................................................. 3

City of Pittsburgh v. W. Penn Power Co.,
   147 F.3d 256 (3d Cir. 1998) ................................................. 14

Conley v. Gibson,
   355 U.S. 41 (1957) ................................................. 3

Corr. Med. Care, Inc. v. Gray, No. CIV.A. 07-2840,
   2008 WL 248977 (E.D. Pa. Jan. 30, 2008) ................................. 9

Court v. Loews Philadelphia Hotel, Inc., No. CV 16-4848,
   2017 U.S. Dist. LEXIS 19720 (E.D. Pa. Feb. 13, 2017) ................. 9

Dasilva v. Esmor Corr. Servs., Inc.,
   167 F. App'x 303 (3d Cir. 2006) ................................................. 20

De Asencio v. Tyson Foods, Inc.,
   342 F.3d 301 (3d Cir. 2003) ................................................. 20

DeFranca v. Trans-Fleet Concrete, Inc.,

41 Pa. D & C.5th 518 (Pa. Com. Pl. 2014) ............................................................. 6

Delux Cab, LLC v. Uber Techs., Inc., 16CV3057-CAB-JMA,
2017 WL 1354791 (S.D. Cal. Apr. 13, 2017) ................................................... 12-13

Dempsey v. Walso Bureau, Inc.,
246 A.2d 418 (1968) ............................................................................................. 6, 8

Doe v. Schneider,
667 F. Supp. 2d 524 (E.D. Pa. 2009) ....................................................................... 9

Donnelly v. Commonwealth Financial Systems,
08 U.S. Dist. LEXIS 28604 -30- (M.D.Pa. Mar. 20, 2008) .................................... 23

Ford v. Schering-Plough Corp.,
145 F.3d 601 (3d Cir. 1998) .......................................................................... 3, 6, 14

Fosburg v. Lehigh Univ.,
1999 U.S. Dist. LEXIS 2833 at *13 (E.D. Pa. Mar. 4, 1999) ................................ 13

Frederico v. Home Depot,
507 F.3d 188 (3d Cir. 2007) ................................................................................... 10

Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp.,
27 Fed. Appx. 94 (3d Cir. 2002) ............................................................................ 16

Georgine v. Amchem Prods.,
83 F.3d 610 .............................................................................................................. 18

Great West Life Assur. Co. v. Levithan,
834 F. Supp. 858 (E.D. Pa. 1993) ........................................................................... 22

Grp. Against Smog & Pollution, Inc. v. Shenango Inc.,
810 F.3d 116 (3d Cir. 2016) ................................................................................... 14

Heller v. Patwil Homes, Inc.,
713 A.2d 105 (Pa. Super. Ct. 1998) .......................................................................... 3

In re Catanella and E.F. Hutton and Co.,
583 F.Supp. 1388 (E.D.Pa. 1984) ........................................................................... 23

In re Cendant Corp. Litig.,
264 F.3d 201 (3d Cir. 2001) ................................................................................... 15

In re Diet Drugs Prods. Liab. Litig.,
369 F.3d 293 (3d Cir. 2004) ................................................................................... 17

In re Gen. Am. Life Ins. Co. Sales Practices Litig.,
357 F.3d 800 (8th Cir. 2004) ............................................................................ 18, 19

In re Pet Food Prods. Liab. Litig.,

629 F.3d 333 (3d Cir. 2010) ................................................................. 15

In re Prudential Ins. Co. of America Sales Practices Litigation,
177 F.R.D. 216 (D.N.J 1997) ............................................................. 21

J/H Real Estate Inc. v. Abramson,
901 F.Supp. 952 (E.D. Pa. 1995) ...................................................... 13

Jane Doe 1 v. Uber Technologies, Inc.,
184 F.Supp. 3d. 774 (N.D. Cal. 2016) ............................................... 12

Krasevic v. Goodwill Indus. of Cent. Pennsylvania, Inc.,
764 A.2d 561 (Pa. Super. Ct. 2000) ..................................................... 9

L.A. Taxi Coop., Inc. v. Uber Technologies Inc.,
114 F. Supp. 3d 852 (N.D. Cal. 2015) ............................................... 13

Martin V. Evans,
551 Pa. 496, 711 A.2d 458, 461 (Pa. 1998) ..................................... 3, 4

McGowan Investors LP v. Frucher,
392 Fed. Appx. 39 (3d Cir. 2010) ...................................................... 16

McMahon v. Arsenberger Trucking Co.,
2018 U.S. Dist. LEXIS 172373 (E.D. Pa. Oct. 5, 2018) ...................... 9

Miller v. Group Voyagers, Inc.,
912 F. Supp. 164 (E.D. Pa. 1996) ..................................................... 22

Morton Eisen v. Carlisle & Jacquelin et al.,
417 U.S. 156 (1974) ................................................................... 19, 20

North Penn Transfer, Inc., v. Victaulic Co. of Amer.,
859 F. Supp. 154 (E.D. Pa. 1994) ..................................................... 22

Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,
998 F.2d 1192 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994) ...... 13

Petruska v. Gannon Univ.,
462 F.3d 294 (3d Cir. 2006) .............................................................. 10

Pettyjohn v. Goodyear Tire & Rubber Co.,
Civil Action No. 91-2681, 1992 U.S. Dist. LEXIS 12153 (E.D. Pa. Aug. 13, 1992) ...... 4, 5, 6

R.A. ex rel. N.A. v. First Church of Christ,
748 A.2d 692 (Pa. Super. 2000) .......................................................... 6

Rios v. Marv Loves 1,
No. 13-1619, 2015 WL 5161314 (E.D. Pa. Sept. 2, 2015) ..................... 6

Ross v. Metro. Life Ins. Co.,

411 F. Supp. 2d 571 (W.D. Pa. 2006) ................................................................... 17

Schmidt v. Ford Motor Co.,
    972 F. Supp. 2d 712 (E.D. Pa. 2013) ............................................................... 10

Singleton v. Medearis, No. 09-cv-142*3*,
    2009 WL 3497773 (E.D. Pa. Oct. 28, 2009) ......................................................... 6

Thompson v. Peak Energy Servs. USA, Inc.,
    No. 13-0266, 2014 WL 789087 (W.D. Pa. Feb. 26, 2014) ................................... 20

Thompson v. Real Estate Mortg. Network,
    748 F.3d 142 (3d Cir. 2014) .............................................................................. 8

Travelers Indem. Co. v. Cephalon, Inc.,
    620 F. App'x 82 (3d. Cir. 2015) ....................................................................... 10

Wall & Window Coverings, Inc. v. Synchronics, Inc.,
    85 F. Supp. 2d 519 (W.D.Pa. 2000) ................................................................ 10

Young v. Temple Univ. Campus Safety Servs.,
    2015 U.S. Dist. LEXIS 145948 (E.D.P.A. Oct. 28, 2015) .................................... 8

**Statutes, Rules, Other Authorities**

18 Pa.C.S. § 6108 ..................................................................................................... 7

73 Pa. Cons. St. § 201-1 .............................................................................. 2, 10, 11, 12

U.S.C.A. Const. Amend. 14 ................................................................................... 20

Fed. R. Civ. P. 9 .................................................................................................... 10

Fed. R. Civ. P. 12 .................................................................................................. 14

Fed. R. Civ. P. 23 .................................................................................................. 15

N.J.S.A. § 56:8-1 .................................................................................................... 2

Charles A. Wright et al., Federal Practice and Procedure §1380,
    (2d ed. 1995)..................................................................................................... 22

Fair Record Screening Ordinance § 9-3504 ............................................................ 9

McKnight Settlement Agreement §§ 6 ............................................................. 16, 17

Restatement (Second) of Torts § 317 ...................................................................... 3

## I.    <u>INTRODUCTION</u>

A review of the Amended Complaint demonstrates Plaintiff Joseph Fusco's ("Plaintiff") well-pleaded allegations readily satisfy Rule 8, and Rule 9 where applicable. Plaintiff has asserted more than sufficient factual allegations to raise a plausible inference of liability for each of his negligence claims against Defendants Uber Technologies, Inc. and Rasier-PA, LLC ("Uber") and he has asserted detailed allegations of representations by Uber that, if proven false, deceptive, or misleading would sustain Plaintiff's fraud claims.

In response, Uber altogether fails to address Plaintiff's claims for negligent training and for negligent implementation of Uber's policy for matching riders with consumers.  Uber also improperly asks this Court to rule, as a matter of law and without the benefit of any discovery, that a serious gun charge and criminal conviction is tantamount to a "licensing violation" and irrelevant to an employer's decision to hire, retain, or to supervise employees or agents of the company.  And without any credible argument to challenge Plaintiff's fraud allegations, Uber raises an entirely new defense—Uber claims Plaintiff is a member of a proposed class action settlement ("McKnight Settlement"), even though the proposed settlement has not been finalized, it has not been approved by the Court, the matter has been stayed and is on appeal, Plaintiff's claims are outside of the proposed class period, and this matter is expressly excluded from the proposed release.[1]

For these reasons, and others discussed below, the Motion should be denied.

---

[1] Specifically, after reciting some of Plaintiff's fraud allegation, Uber merely argues, "to the extent" the fraud allegations "go beyond mere puffery," Plaintiff released those claims "in the McKnight class action settlement." Uber Mem. of Law at 19.  Uber offers no additional analysis or challenge to Plaintiff's fraud counts.  Further, curiously, Uber never raised the McKnight Settlement in its original motion to dismiss and never advised the Court, counsel, or the parties of the matter at any point in time (including at oral argument just a few months ago).  In addition, it is particularly striking that Uber argued in this case that the allegations raised by Plaintiff are mere puffery knowing full-well the company had reached a tentative settlement to pay $32.5 million and agreeing to injunctive relief to change the advertisements based upon safety and background checks because they are misleading.

## II.   **BACKGROUND**

On December 22, 2016, Plaintiff used his Uber smartphone application ("App") to request a ride to his home in New Jersey after attending a company Christmas party in Philadelphia, Pennsylvania.  Dkt. 23, Am. Compl. ¶¶ 29-33.  When the Uber driver, Defendant Major C. Fuller ("Defendant Fuller"), arrived at Plaintiff's location, Plaintiff entered vehicle and informed Defendant Fuller of his desired destination.  Id. ¶¶ 46-50.[2] Defendant Fuller refused to take Plaintiff to Cherry Hill, New Jersey and demanded Plaintiff "get out of the vehicle." Id.  After Plaintiff asked to be taken to his residence, Defendant Fuller exited the vehicle, dragged Plaintiff out of the front seat, and assaulted Plaintiff.  Id. ¶¶ 51-53.  Defendant Fuller fled the scene and charged Plaintiff for the ride.  Id. ¶¶ 54-58.  After Plaintiff was discharged from the hospital, he informed Uber of the assault, which is when Uber first became aware of the incident.  Id.

On January 5, 2017 Plaintiff brought suit naming Uber as the only defendant.  See Dkt 1. On July 27, 2018, this Honorable Court granted Uber's Motion to Dismiss the Complaint, dismissing the vicarious liability claims with prejudice and dismissing the negligence and fraud claims without prejudice. Dkt. 20, Memo. & Opinion.  On September 14, 2018, Plaintiff amended his complaint and, with respect to Uber, brought claims for negligence (Count I), negligent hiring, retention, training, and supervision (Count VI), fraud and misrepresentation (Counts VII-VIII), and for statutory violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 ("NJCFA") and Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 Pa. Cons. St. § 201-1 et seq. ("PAUTPCPL") (Counts IX-X, respectively).  Dkt. 23.  On September 28, 2018 Uber moved to dismiss the Amended Complaint.  Dkt. 24.

---

[2] As alleged in the Amended Complaint, while Plaintiff submitted his destination to Uber through the App, the destination was not made available to the driver until pick-up.  This is pursuant to Uber policy.  Id. ¶¶ 59-60.

### III.   <u>LEGAL STANDARD</u>

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007).  The court "must consider only those facts alleged in the complaint and accept all of those allegations as true."  <u>ALA, Inc. v. CCAIR, Inc.</u>, 29 F.3d 855 at 859 (3d Cir. 1994).  The Court must also accept as true all reasonable inferences that may be drawn from the allegations and view facts and inferences in the light most favorable to Plaintiff.  <u>Ford v. Schering-Plough Corp.</u>, 145 F.3d 601, 604 (3d Cir. 1998).

### IV.   <u>ARGUMENT</u>

#### A.   <u>Plaintiff Has Properly Pleaded His Negligence Claims.</u>

Pennsylvania employers may be held directly liable for failing to exercise reasonable care in selecting, training, supervising, and controlling employees or agents of the company.  <u>Belmont v. MB Inv. Partners, Inc.</u>, 708 F.3d 470, 487-88 (3d Cir. 2013); Rest. (Second) of Torts § 317 (discussing master-servant relationship).  Pennsylvania courts consider "general tort principles of negligence" when recognizing claims for employer negligence.  <u>Heller v. Patwil Homes, Inc.</u>, 713 A.2d 105, 107 (Pa. Super. Ct. 1998).  To state a negligence claim under Pennsylvania law, a plaintiff must allege (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual loss or damages.  <u>City of Philadelphia v. Beretta U.S.A. Corp.</u>, 277 F.3d 415, 422 n.9 (3d Cir. 2002); <u>Martin v. Evans</u>, 551 Pa. 496, 711 A.2d 458, 461 (Pa. 1998).

In this case, Uber does not dispute it owed consumers, including Plaintiff, a duty to exercise reasonable care in hiring, training, retaining, and/or supervising Defendant Fuller.  <u>See generally</u>

Dkt. 24-2, Uber Mem. of Law at 8-12.  Nor does it challenge that Defendant Fuller, for purposes

of this Motion, is an employee or agent of the company.  Id.[3]  Uber again contends that, despite

the amendments to the complaint, Plaintiff did not plead specific facts relating to Defendant Fuller

or allege any prior conduct that is germane to Plaintiff's negligent hiring, retention, and

supervision claims.  Id. at 9-11.   For several reasons, these arguments should be rejected.

> **1.      As an Initial Matter, Uber Does Not Address Plaintiff's Negligent Training Claims or His Claim Uber Failed to Exercise Care When Matching Drivers with Consumers.**

Uber offers no response to Plaintiff's claims that Uber was negligent by failing to properly

"train" Defendant Fuller and/or by failing to implement policies for matching (or re-matching)

Plaintiff with a driver other than Defendant Fuller.  Compare Uber Mem. of Law. at 9-12 with

Amend. Compl. ¶¶ 59-80, 81-110, 102-123, 187-96.[4]  Plaintiff specifically claims this case arises

directly out of (i) Uber's policy of not revealing the rider destination to Defendant Fuller, (ii)

Uber's policy of penalizing Defendant Fuller for declining rides rather than connecting Plaintiff

with the appropriate driver in the first place, (iii) Uber's failure to provide means and methods to

connect Plaintiff with a driver that is willing to travel to the preferred destination, (iv) Uber's

failure to train Defendant Fuller on "how" to address situations where he "does not want to travel

to a particular destination," such as to connect the consumer with another driver or to a supervisor,

(v) Uber's failure to train Defendant Fuller on how to address a consumer who is "upset when

---

[3] While Plaintiff maintains that Uber employs its drivers, Plaintiff need only establish a master-servant or agency relationship to establish Uber is liable for harm caused to third parties by its agent driver.  Pettyjohn v. Goodyear Tire & Rubber Co., Civil Action No. 91-2681, 1992 U.S. Dist. LEXIS 12153, at *1 (E.D. Pa. Aug. 13, 1992) ("Ordinary care in the selection and retention of servants and agents implies that degree of diligence and precaution which the exigencies of the particular service reasonably require…One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.") (internal citation omitted).

[4] For this reason alone, the Motion should be denied as to these aspects of Plaintiff's negligence claims.

learning a driver is rejecting a ride after originally accepting it," (vi) Uber's failure to train Defendant Fuller "on how to deal with intoxicated customers," and/or (vii) Uber's failure to train Defendant Fuller on how to address emergencies.  Amend. Compl. ¶¶ 59-80, 81-110, 102-123, 187-96.  Plaintiff alleges that rather than provide training or supervision to Defendant Fuller on any of these subjects, Uber simply threatened to penalize Defendant Fuller *if* it was reported to the company he denied a requested ride.  Id. ¶¶ 61, 71, 80, 192(p).

Plaintiff also claims Uber negligently implemented its policy of not informing drivers of the consumer's requested destination.  Id. ¶¶ 47, 59-80, 192.  Plaintiff alleges that instead of having policies, procedures, or technology that would have allowed Defendant Fuller to learn of Plaintiff's destination in advance and/or to dispatch a driver other than Defendant Fuller (i.e., one who desired to drive Plaintiff to his desired destination or a particular area), Uber "deliberately created a system of drivers who do not know where they are going until after they accept a ride or pick up a passenger."   Id. ¶ 62.  In other words, "if no such driver was available, Uber could have not connected Plaintiff with any Uber driver at all, permitting Plaintiff to obtain a ride from another source, such as a taxi, another ridesharing company, public transportation, or even a friend."   Id. ¶ 74.  Moreover, Plaintiff specifically claims Uber *has* the technology and the ability to allow drivers and riders to select mutually agreeable trips; it has the technology and the ability to divert passengers to other Uber drivers who are willing to accept passengers regardless of destination or to a particular area; it has the technology to ensure that the driver is willing to travel to the particular destination without a disruption to quality of service; and that its competitors utilize such technology, i.e., a software re-matching system that swaps out the current driver for another who is close to a passenger's pickup destination.  Id. ¶¶ 75-80, 192.  Plaintiff alleges, "at the time of Plaintiff's assault, Uber had no re-matching system – though it was capable of implementing such

a system – or Uber failed to train Defendant Fuller on the use of such system." Id.

Plaintiff thus claims the aforementioned failures proximately caused his injuries. And, in Pennsylvania, an employer is liable when it "does not exercise 'due and reasonable care,' just as an individual is liable for negligence under the same standard." Singleton v. Medearis, No. 09-cv-1423, 2009 WL 3497773, at *6 (E.D. Pa. Oct. 28, 2009); DeFranca v. Trans-Fleet Concrete, Inc., 41 Pa. D & C.5th 518 (Pa. Com. Pl. 2014) ("Mr. Franks required them to go through training with him before they operated the pump on their own…A jury could reasonably conclude that Trans-Fleet had a duty to train the pump truck operators based on Mr. Franks testimony that the only training required to work at 5 Star is with him.").   Uber never moved to dismiss this part of Plaintiff's negligence claim, though the Amended Complaint contains more than "sufficient factual matter" to "state a claim for relief that is plausible on its face" (particularly after providing Plaintiff all reasonable inferences and viewing the allegations in the most favorable light to him). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Ford, 145 F.3d at 604.

## 2. Plaintiff Pleaded Specific Instances of Past Misconduct Pertaining to the Uber Driver, Defendant Fuller.

For negligent hiring, retention, and supervision claims, a plaintiff must demonstrate (i) an employer knew or should have known of an employee's propensity for violence, and (ii) the employment created a situation where the violence could harm a third party.  Rios v. Marv Loves 1, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015); R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 697 (Pa. Super. 2000); Belmont, 708 F.3d at 487-88 (plaintiff must allege employer failed to exercise ordinary care to prevent intentional harm to a third-party for negligent supervision); Dempsey v. Walso Bureau, Inc., 246 A.2d 418, 420 (1968) (employer declined to terminate employee after learning of unsafe tendency for negligent retention).

Here, Uber asserts "Plaintiff did not allege a single fact that would suggest that Fuller" had

a "propensity for violence."  Uber Mem. of Law at 10-12.  This assertion is inaccurate and

baseless.[5]  Plaintiff explicitly alleges:

- Despite transporting members of the public and being in a critical position of public safety, Defendant Fuller had no experience or prior employment in the transportation of passengers.  Amend. Compl. ¶ 86.

- "Defendant Fuller was in involved a violent altercation in Philadelphia, Pennsylvania that resulted in his admission to Chestnut Hill Hospital," which resulted in Defendant Fuller being "arrested and charged with unlawfully possessing a concealed firearm – a Smith and Wesson revolver – that included five live rounds of ammunition.  Id. ¶¶ 87-96

- Defendant Fuller was convicted of violating 18 Pa.C.S. § 6108, a serious crime that can result in up to 5-years of incarceration and which if combined with other potential charges could result in felony conviction.  Id.

- Had Uber conducted an in-depth background check or conducted any meaningful screening during the interview process prior, Uber would have learned that Defendant had a prior criminal history. Id. ¶ 98.

- The conviction in and of itself warranted ineligibility or, at a minimum, warranted further investigation into his background, additional screening/vetting, and more stringent training prior to allowing him to transport members of the public.  Id. ¶ 99.

- Uber was either unaware of Defendant Fuller's prior conviction, or was made aware, and failed to take additional precautions such as conducting an in-person interview, reviewing third-party references, and failed to the determine the precise circumstances that resulted in this conviction.  Id. ¶ 101.

Further, Uber claims that, despite the prior "gun conviction" and "violent altercation," no

reasonable employer would be dissuaded from hiring Defendant Fuller; nor would it conduct

additional screening, take additional precaution, or institute additional training, monitoring, and

supervision upon learning of Defendant Fuller's prior gun conviction or the violent altercation that

---

[5] Uber improperly asks this Court to accept its characterization of the gun conviction as a "licensing violation" and to engage in the role of fact finder by declaring Defendant Fuller the "victim" of the "violent altercation" that resulted in him being injured and transported to the hospital.  Uber Mem. of Law at 10-11.  In essence, Uber asks the Court to view the allegations in the most favorable light to Uber and to adjudicate certain facts regarding the events that resulted in the conviction, neither of which is appropriate at this stage of the litigation.  See supra § III, Legal Standard.  As this Court recognized at oral argument in July 2018, discovery will be necessary to develop the record as to what precisely transpired, what information Uber had in its possession at the time it hired Defendant Fuller, and whether, if presented with such information, Uber would have taken additional precautions during and after the hiring process (or made decision not to hire Defendant Fuller at all).  These are fact issues appropriate for a jury.

resulted in his hospitalization.  Uber Mem. of Law at 10-11.  In support, Uber relies primarily upon Young v. Temple Univ. Campus Safety Servs., where, unlike here, the plaintiff did not plead a *single* allegation relating to duty, breach of duty, causation, or to show a "propensity to engage in conduct for which [the defendant] could be held liable."  2015 U.S. Dist. LEXIS 145948, at *12-13 (E.D.P.A. Oct. 28, 2015).  Uber also cites to Dempsey, where the court examined an employee's prior conduct on the job to determine if it was such that would show a propensity for violence.  246 A.2d 418, 422-23.  The employee, a security guard at a bus terminal, assaulted the plaintiff and the plaintiff claimed the employee's prior conduct in the workplace indicated a propensity for violence.  Id. at 419. The prior conduct consisted of acts such as pushing intoxicated people, jabbing other employees with his nightstick, and striking the feet of people sleeping in the terminal. Id. at 422.  *At summary judgment*, the court found that these acts were "horseplay," did not indicate a propensity for violence, and that prior to the hiring of the security officer, "[his] past was exemplary."  Id. at 423.

Uber's argument should be rejected.  For one, Dempsey and Young are inapposite.  This case is at the pleading stage and, at a minimum, it involves a serious prior gun conviction stemming from a violent altercation in which Defendant Fuller possessed a concealed Smith and Wesson revolver with five live rounds of ammunition.[6]  Uber cites no legal support for the proposition that such prior conduct is, as matter of law, irrelevant to employer hiring, retention, and supervision decisions or Plaintiff's negligence claims.  For another, this District has denied motions to dismiss

---

[6] The fact that Plaintiff has identified prior misconduct of Defendant Fuller, alone, is sufficient to state a claim. Discovery, however, may reveal other prior acts of misconduct not in the public record that Uber was aware due to the background check or unaware due to the alleged deficiencies in the screening process.  This is particularly true here as Uber is a private company in sole possession of the information it had about Defendant Fuller when hiring him, and it is the only party with access to information regarding his employment, including reviews and reported incidents.  Notwithstanding, Plaintiff's allegations "set[] forth a reasonable expectation that discovery will reveal evidence" as to exactly what Uber knew and when it knew it.  Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014) (internal citation omitted).

and for summary judgment where there was no prior criminal record and where significantly fewer specific facts of prior conduct were alleged. <u>McMahon v. Arsenberger Trucking Co.</u>, 2018 U.S. Dist. LEXIS 172373, at *25-26 (E.D. Pa. Oct. 5, 2018) ("Plaintiffs allege that Arsenberger interviewed, hired, and trained Best in violation of the FMCSR and, along with Trucking Co., entrusted Best with a tractor-trailer knowing that he was improperly trained, inexperienced, and unqualified, posing a risk of danger to others. Taking the allegations in the Amended Complaint in the light most favorable to Plaintiffs, a jury could find that Defendants were negligent in hiring and retaining Best and entrusting him with Defendants' vehicle."); <u>Court v. Loews Philadelphia Hotel, Inc.</u>, No. CV 16-4848, 2017 U.S. Dist. LEXIS 19720, at *16 (E.D. Pa. Feb. 13, 2017) ("The Court is not convinced that, as a matter of law, an employer's duty to conduct a pre-employment investigation is met solely by relying on a license subject to *self-reporting* requirements… the Court finds that Ms. Court has sufficiently pleaded that that the Gym Defendants breached a duty, which resulted in her injuries"); <u>Doe v. Schneider</u>, 667 F. Supp. 2d 524, 531-32 (E.D. Pa. 2009) (same); <u>Corr. Med. Care, Inc. v. Gray</u>, No. CIV.A. 07-2840, 2008 WL 248977, at *67 (E.D. Pa. Jan. 30, 2008) ("In their complaint, plaintiffs allege that Douglas is liable for negligent hiring because he retained Miller and ISA, who were unqualified for the job and were unlicensed… While the complaint may be lacking in many ways, it sufficiently puts defendants on notice of the factual predicates for each element of the claim--the hiring of Miller, ISA and the Doe defendants, who were all allegedly improper persons to conduct the investigation. The court will therefore deny the motion to dismiss Count VII."); <u>Krasevic v. Goodwill Indus. of Cent. Pennsylvania, Inc.</u>, 764 A.2d 561, 564 (Pa. Super. Ct. 2000) (denying post-trial motion).[7]

---

[7] Uber also erroneously refers to the Fair Record Screening Ordinance (§ 9-3504).  That Ordinance went into effect in March 2016 and only applies to "Private Employer's," a position that Uber has opposed across the country and in this case.  The suggestion that Uber could not (or would not) consider Defendant Fuller's prior conviction because of the Ordinance is disingenuous at best.  Prior to the March 2016 amendment, the Ordinance merely required employers to

**B.**     **Uber's Fraudulent Representations Are Not "Puffery."**

As this Court is well-aware, "Puffery is distinguishable from misdescriptions or false representations of specific characteristics." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir.1993); Wall & Window Coverings, Inc. v. Synchronics, Inc., 85 F. Supp. 2d 519, 532 (W.D.Pa. 2000) (puffery is "exaggeration or overstatement expressed in broad, vague and commendatory language"). Explicitly excepted from this definition, however, are "specific and measurable" statements regarding safety. Id. Indeed, when addressing Plaintiff's original complaint, this Honorable Court distinguished between "general" terms of "quality" or "safety" from representations that could be measured and shown to be literally or "objectively false," such as by comparison to Uber's competitors. Dkt. 20, Memo & Opinion at pp. 10-19.[8]

Here, Plaintiff alleges Uber made the following false or misleading statements:

- "All Uber [drivers] must go through a rigorous background check that leads the industry;"

- "Uber has Background Checks that Exceed any Local or National Standard;"

- "Uber's background check process is often more rigorous than what is required to become a taxi driver;"

- "Uber's safety measures ***always*** exceed what is required of local taxi companies;"

---

postpone any criminal record inquiries until after a "first interview" with an applicant (which included even telephone screening interviews) and prohibited employers from considering non-pending arrests *not* resulting in conviction. Employers are then permitted to make an "individual assessment" based upon a number of factors as to whether candidate will be hired or retained notwithstanding the conviction. This is precisely what Plaintiff claims Uber should have done, but did not do, when hiring or retaining Defendant Fuller.

[8] Plaintiff alleged, in detail, that he became aware of Uber's representations through its website, App, or media outlets, he identifies the specific representations and advertisements that are false, he identifies Uber executives that repeated the false representations in the media or on the company website, he details why Uber's representations regarding safety are false or misleading, and he explains he relied on Uber's safety, screening, and representations to his detriment. Amend. Compl. ¶¶ 124-164, 197-223. Uber thus does not argue the allegations in the Amended Complaint fail to meet applicable fraud pleading standards. Fed. R. Civ. P. 9(b); Travelers Indem. Co. v. Cephalon, Inc., 620 F. App'x 82, 85-86 (3d. Cir. 2015) (explaining Rule 9(b)'s particularity is to safeguard defendants against "spurious charges of immoral and fraudulent behavior"); Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007); Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498 n.33 (3d Cir. 2013); Petruska v. Gannon Univ., 462 F.3d 294, 310 (3d Cir. 2006); Schmidt v. Ford Motor Co., 972 F. Supp. 2d 712, 720 (E.D. Pa. 2013). But see Christopher v. First Mut. Corp., No. 05-01149, 2006 WL 166566, at *3 (E.D. Pa. Jan. 20, 2006) ("deceptive conduct" under PAUTPCPL "need not meet the traditional heightened pleading standard."); 73 Pa. Stat. § 201-2(4)(xxi) (deceptive conduct "create[] a likelihood of confusion" for a consumer).

- "Uber's background checks go back as far as the law allows;"
- **"Screening for safe drivers is just the beginning of our safety efforts**… **Unlike the taxi industry**, our background checking process and standards are consistent across the United States and **often more rigorous than what is required to become a taxi driver**."
- "**We're confident that every ride on the Uber is safer than a taxi.**"
- We continue to improve and are always working hard to **tighten our policies and processes to ensure that Uber remains the safest transportation option available."**
- "We work every day to connect riders with the safest rides on the road and **go above and beyond local requirements in every city we operate**…. Uber only partners with drivers who pass an **industry-leading screening** that includes a criminal background check at the county, federal, and multistate **level going back as far as the law allows**."

Id. ¶¶ 127-36 (emphasis in original).

Plaintiff explicitly alleges the above statements are "false" and "mislead" consumers into believing that a ride in an Uber vehicle is not just safe, but that it is the safest method of ridesharing transportation and specifically safer than taxis.  Id. ¶¶ 124-26, 128, 137.  In turn, Plaintiff presents a detailed comparison of Uber's screening process to that of a taxi company.  Compare id. ¶¶ 138-47 (detailing taxi screening process) with ¶¶ 148-154 (discussing Uber's screening process).  In addition, Plaintiff explicitly alleges why Uber's representations regarding screening and background checks, namely, that they "exceed any local or national standard" across the country and are "more rigorous" than those imposed upon taxi drivers, are false:

> To begin, Uber's screening and background checks are **less rigorous** than those conducted by taxi service.   For example, among other things, taxi services in most cities (i) utilize Live Scan biometric fingerprint background check, which is more rigorous than those imposed by Checkr or similar vendors, (ii) do not impose temporal limits (or go beyond seven years) on background checks, while Checkr or similar vendors have such limitations, (iii) require drivers to take safety training and pass examinations, while Uber has no safety training, no examinations, and resorts to a short instructional video, and/or (iv) requires vehicle safety inspections and maintenance standards,  when Uber does not have any such requirements.   Indeed, the background checks for taxi drivers can take up to two months to complete while Uber's are returned within two to three days.

Id.  ¶¶ 124-26, 128, 137; id.  ¶ 143 (taxi requires examination, while Uber does not), ¶ 144 (requires

safety training, emergency aid training, and more while Uber does not), ¶ 145 (18 hours of

instruction from the Commission, while Uber does not), ¶ 146 (automatic disqualifications, while

Uber does not), ¶¶ 147-48 (full criminal background check, while Uber does not), ¶ 149 (Live

Scan biometric fingerprint background checks of applicants, while Uber does not), ¶ 150 ("Uber

also does not conduct in-person interviews of potential drivers; does not check prior employment

or personal references; and does not check employment history or speak with former supervisors,

all of which are generally performed by taxi companies.").  Plaintiff also alleges statements that

Uber's screening is "above and beyond local requirements," the company employs the "strictest

standards possible," and its background checks "go[] back as far as the law allows" or "lead the

industry," are plainly false.  Id. ¶¶ 127-36.  To the contrary, Plaintiff competitors conduct more

screening and stringent background checks, id., "Uber has unilaterally decided that seven years is

the maximum look-back period," id. ¶ 157, and "numerous state and local governments have

***forced*** Uber to conduct more stringent background checks and screening," id.  ¶ 158

In sum, whether Uber's driver screening and background checks meets its own represented

standards, whether they exceed or meet those of a taxi cab company, whether they exceed or meet

those of other similar rideshare companies, or whether they "go above and beyond" government

standards are readily measurable and easily comparable.  Uber's motion to dismiss the fraud claims

on "puffery" grounds thus should be denied.  See Dkt. 10 at pp. 10-19; Castrol, 987 F.2d at 939

(Pennzoil's claims of "superiority" was not puffery); see also Jane Doe 1 v. Uber Technologies,

Inc., 184 F.Supp. 3d. 774 (N.D. Cal. 2016) (denying motion to dismiss regarding Uber's false

representations of safety, screening); see also Delux Cab, LLC v. Uber Techs., Inc., 16CV3057-

CAB-JMA, 2017 WL 1354791, at *5 (S.D. Cal. Apr. 13, 2017) ("A reasonable consumer reading

these statements in the context of Uber's advertising campaign could conclude that an Uber ride is objectively and measurably safer than a ride provided by a taxi or other competitor service…"); L.A. Taxi Coop., Inc. v. Uber Technologies Inc., 114 F. Supp. 3d 852, 860-62 (N.D. Cal. 2015) (denying motion to dismiss regarding Uber's false representations of safety and screening).

### C.   The McKnight Settlement Has No Bearing on This Case.

#### 1.   Rule 12(b)(6) Precludes Uber's Use of Documents Outside the Pleadings.

For documents outside the pleadings to be considered, those documents must form the actual source of Plaintiff's case. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994); Fosburg v. Lehigh Univ., 1999 U.S. Dist. LEXIS 2833 at *13 (E.D. Pa. Mar. 4, 1999).  The inquiry is not whether the documents are potentially relevant to the case at large, but whether the documents proffered form the basis of the claims.  Id.; J/H Real Estate Inc. v. Abramson, 901 F.Supp. 952, 955 (E.D. Pa. 1995) (refusing to consider on a motion to dismiss documents not in the public record and not relied on by the plaintiff in the complaint).  In its Motion, Uber claims for the first time Plaintiff has already released his fraud claims pursuant to a class action settlement.  Putting aside the propriety of raising this issue now, Uber's entire argument rests on a single fact outside the pleadings and unrelated to the Amended Complaint: "Plaintiff took a trip and was charged a 'Safe Rides Fee' in October 2015, which within the class period."  Uber Mem. of Law at 17 (citing Epiq affidavit).

In short, the documents proffered by Uber are cited only for an improper purpose – to concoct an argument that Plaintiff cannot sue for damages related to his December 2016 ride because he purportedly utilized Uber's service in 2015.  On the face of the Amended Complaint, however, Plaintiff does not seek recovery for damage in connection with a "Safe Rides Fee," nor does he assert any claim arising out of an Uber ride he took in October 2015.  Plaintiff seeks

damages *only* for the December 2016 ride during which he was assaulted by one of Uber's drivers. See Amend. Compl.  Any other ride or dealings between Uber is wholly irrelevant to Plaintiff's claims and not properly before this Court on a Rule 12(b)(6) motion. Grp. Against Smog & Pollution, Inc. v. Shenango Inc., 810 F.3d 116, 127 (3d Cir. 2016) (when deciding a 12(b)(6) motion "it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.") (quoting City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998)); Ford., 145 F.3d at 604.

While Uber's effort to impermissibly expand the scope of its bargained for release must fail for substantive reasons stated below, the Motion should also be denied as it rests exclusively on documents not properly before this Court pursuant to Rule 12(b)(6).[9]

### 2.    The McKnight Settlement Has Not Been Approved by the District Court and the Matter Has Been Stayed.

If the Court chooses to consider matters beyond the pleadings, Uber's motion presents a single issue:  whether the damages caused by the December 2016 assault are released by the McKnight Settlement.  The answer is no.  To begin, the proposed settlement has *not* been approved by the District Court.  Thus, even if Plaintiff's claims are captured by the release (and they are not), the settlement has no binding or operative effect on this Court or any parties thereto.  The McKnight Settlement agreement makes this clear:

> "Effective Date" means the date on which the Final Order and Final Judgment in the Action become "Final." As used in this Amended Stipulation of Settlement, "Final" means one (1) business days after all of the following conditions have been satisfied: (a) the Final Order and Final Judgment have been entered; and (b)(i) if reconsideration and/or appellate review is not sought from the Final Order and Final Judgment, the expiration of the time for the filing

---

[9] While a defendant has a right to annex exhibits upon which a plaintiff's claims are based, that right is not absolute and is, in fact, a limited exception to a strict rule.  Pension Benefit, 998 F.2d at 1196.  While the Court may treat Uber's motion as one for summary judgment under Rule 56, Plaintiff would invoke his right to be afforded a reasonable opportunity to present all material pertinent to the motion. Fed. R. Civ. P. 12(d).

> or noticing of any motion for reconsideration, appeal, petition, and/or writ; or (b)(ii) if reconsideration and/or appellate review is sought from the Final Order and Final Judgment: (A) the date on which the Final Order and Final Judgment are affirmed and are no longer subject to judicial review, or (B) the date on which the motion for reconsideration, appeal, petition, or writ is dismissed or denied and the Final Order and Final Judgment are no longer subject to judicial review.

Dkt. 24-10, McKnight Settlement Agreement § 16; Uber Mem. of Law at 15-16 ("The motion for final approval is currently stayed pending the Ninth Circuit's *en banc* review…").

There simply has been no settlement, no class action approval, and no release of claims. For this reason alone, the Motion to dismiss the fraud claims should be denied. Fed. R. Civ. P. 23(e)(2) (claims of certified class may be settled *only* with approval of Court, upon a finding, after reasonable notice and a hearing, the settlement is "fair, reasonable, and adequate."); In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 350 (3d Cir. 2010); In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001) (discussing Girsh factors).

**3.    Even if the Settlement Is Approved, the Claims Asserted in *This* Case Will Not Be Released and Are Specifically Excluded.**

The specific language of the McKnight Settlement Agreement expressly limits the scope of the Settlement "Class," claims for relief, and the "Released Claims" to:

> "Class" means all persons who, from ***January 1, 2013 to January 31, 2016***, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories. "Uber Ride Services With A Safe Rides Fee'" means all transportation services that were arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as UberX, etc.).
>
> …
>
> "Released Claims" (a) "Released Claims" means and includes all manner of action, causes of action, claims, demands, rights, suits, obligations, restitution, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and

attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, which Plaintiffs and Class Members have or may have arising out of or relating to any allegations made in the Action, or any legal theories that could have been raised based on the allegations in the Action. The Released Claims include, but are not limited to, any claim arising out of or relating to Defendants' representations or omissions regarding background checks, safety, or the Safe Rides Fee. Notwithstanding any other provision of this Amended Stipulation of Settlement, ***"Released Claims" do not include, and Plaintiffs and Class Members are not releasing, any action***, causes of action, claims, demands, rights, suits, obligations, restitution, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, ***arising out of or relating to personal injuries.***

McKnight Settlement Agreement §§ 6, 31 (emphasis added); Uber Mem. of Law at 16.

The Court's analysis thus is straightforward.  It is axiomatic that courts construing contracts must give specific terms and exact terms greater weight than general language, though "releases should be construed narrowly, i.e., words of a release should not be constructed to extend beyond the express consideration mentioned so as to make a release for the parties which they never intended or contemplated." <u>Carcaise v. Cemex, Inc.</u>, 200 Fed. Appx. 116, 125 (3d Cir. 2006). Basic contract principles govern the evaluation of settlement agreements and Uber is bound by the specific date scope limitations within the agreement it negotiated and executed.  <u>McGowan Investors LP v. Frucher</u>, 392 Fed. Appx. 39, 45 (3d Cir. 2010).  As such, the court is bound to examine the plain language of the settlement and release. <u>Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp.</u>, 27 Fed. Appx. 94, 99-100 (3d Cir. 2002).  And here, Uber took a calculated risk to minimize the damage claims of the Settlement and limited the Settlement Classes to (i) rides that took place between January 2013 through January 2016, and (ii) "Uber Ride Services With A Safe Rides Fee," neither of which is the case here.  In addition, Uber agreed to expressly exclude "any

action" that "relates to" any personal injury, which is the case here.   McKnight Settlement Agreement §§ 6, 31.

Uber's position is legally and factually untenable.  Plaintiff's fraud claims simply are not subject to the McKnight Settlement, and any interpretation expanding the claims beyond the express time period is contrary to Third Circuit law requiring strict adherence to the specific language of a release.   There is no basis to impermissibly expand the settlement and strip Plaintiff from asserting claims expressly excluded from the Rule 23(b)(3) Settlement Classes.

### 4.     The Notice Presents Serious Due Process Concerns.

Expanding the settlement to include his fraud claims for which Notice was never provided also violates due process.   "[P]reclusion language in the … class notice and settlement agreement must, in order to avoid due process concerns, be strictly construed against those who seek to restrict class members from pursuing individual claims." In re Diet Drugs Prods. Liab. Litig., 369 F.3d 293, 308 (3d Cir. 2004).  The Third Circuit is clear: "due process considerations counsel against binding absent potential class members to understandings that were not made express in the class notice or settlement agreement." Id. at 310.   To the extent there is a question concerning the efficacy of the Released Claims, the issue turns on "the adequacy of the notice given to the class concerning the rights which were being waived."  Ross v. Metro. Life Ins. Co., 411 F. Supp. 2d 571, 577 (W.D. Pa. 2006).  The due process concerns arising from inadequate notice have been aptly stated by the Third Circuit:

> The decision of a potential settlement class member to remain with the class or to opt out entirely at the threshold is a fateful one. The average class member has had no hand in negotiating the terms of the settlement. As demonstrated in *Prudential I*, the settlement's preclusive effect may be broad and strict. By waiving an initial opt-out, the class member surrenders what may be valuable rights, in return for countervailing benefits. In this case, important information for these potential class members included the availability, benefits, and disadvantage of the intermediate opt-out

right.

> This opt-out choice raises a significant issue of fairness. As in *Georgine v. Amchem Prods.*, the individual class members here have claims "that frequently receive huge awards in the tort system." *Georgine v. Amchem Prods.*, 83 F.3d 610, at 633. They can hardly knowingly waive some of their tort rights without a clear notice of what they are waiving. They may be entirely dependent on the class notice for this information. That is why we paid careful attention to the language of the class notice, which detailed the extent of the released claims, in upholding the injunction that enforced the preclusive provisions of the settlement in *Prudential I.*, 261 F.3d at 366-67.

> It follows that the preclusion language in the Diet Drugs class notice and settlement agreement must, in order to avoid due process concerns, be strictly construed against those who seek to restrict class members from pursuing individual claims.

In re Diet Drugs, 369 F.3d at 308; see also, In re Gen. Am. Life Ins. Co. Sales Practices Litig.,

357 F.3d 800, 805 (8th Cir. 2004) (basing claim preclusion on scope and clarity of Class Notice).

Uber's entire argument incorrectly presumes Plaintiff is in the Settlement Class for claims

arising out the December 2016 ride.  Thus, even if the Court entertains Uber's release argument,

the Notice makes clear extending the Released Claims to dismiss the Amended Complaint presents

serious due process concerns.  Under the heading, "WHO IS PART OF THE SETTLEMENT,"

the Long Form Notice states: "5. Who is included in the Settlement? The Settlement includes all

persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain

service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its

territories. 'Uber Ride Services With A Safe Rides Fee' means all transportation services that were

arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as

UberX, etc.)."  Dkt. 24-13.  As the Released Claims cover only claims of the Settlement Class

Members, no benefits from the McKnight Settlement existed for consumers utilizing Uber's

services *after* January 31, 2016 or for those that did not pay a Safe Rides Fee.  Id.

Stated differently, for the claims being asserted, utilizing Uber's service from January 2013 through January 2016 and paying a Safe Rides Fee, is an absolute prerequisite to Settlement Class membership and the right to obtain relief under the Settlement.  Plaintiff could not opt-out of a class it was not a member of nor could it obtain any benefits from that settlement.  The Notice is clear and proper but is expressly limited to a specific time period.  This case is not part of the McKnight Settlement and is directly contrary to the Notice provided to potential class members.[10]

> **5.  Given that Plaintiff Was Not Provided Actual Notice, and that Uber Litigated this Matter for 21 Months Without Mentioning the McKnight Matter, Plaintiff Is Filing a Motion for Leave to Opt Out of the Class Action Settlement or Alternatively Enlarge the Time to Opt Out.**

The United States Supreme Court has found that pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure, "the court[s] [are] required to direct to class members 'the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'" Morton Eisen v. Carlisle & Jacquelin et al., 417 U.S. 156, 173 (1974)(emphasis added). The Supreme Court went on further to say that, "[w]e think the import of this language is unmistakable. Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable efforts." Id.  "[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id.at 174 (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

"[I]ndividual notice to identifiable class members is not discretionary consideration to be waived in a particular case." Id. at 176.  Class members must be afforded the minimum procedural

---

[10] While Plaintiff maintains the settlement agreement and notice clearly do not contemplate the claims here, at the very least, neither document makes it apparent to a potential class member that a ride taken in 2015 for which a Safety Fee was paid would also preclude or encompass any litigation arising out of a ride that took place in 2016. Given the sophisticated nature of the settlement agreement and counsel, Uber easily could have made clear in the agreement itself or within the notice that it intended to cover claims arising out of rides subsequent to January 31, 2016.

requirements of the Fourteenth Amendment's Due Process Clause, i.e., notice plus an opportunity to be heard and participate in the litigation; the notice must be the best practicable, reasonably calculated to apprise class members of the pendency of the action and afford them an opportunity to present their objections, and the notice should also describe the class members' rights in the action and provide them an opportunity to remove themselves from the class.  U.S.C.A. Const. Amend. 14.   Pursuant to Rule 6(b)(1)(b) of the Federal Rules of Civil Procedure, this Court can, for good cause, extend the time for Plaintiff to opt out of the class action settlement on a motion made after the time has expired.

Even when class action notice procedures satisfy the requisites of due process, jurisdictions all over the nation, while exercising their discretion, may extend the opt-out period when a class member demonstrates "excusable neglect" or "good cause" for its failure to opt out within the deadline.  Dasilva v. Esmor Corr. Servs., Inc., 167 F. App'x 303, 307 (3d Cir. 2006); De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 313 (3d Cir. 2003); Camesi v. Univ. Of Pittsburgh Med. Ctr., No. 09-cv-85, 2009 U.S. Dist. LEXIS 111272 (W.D. Pa. Dec. 1, 2009) (citing cases); Moya v. Pilgrim's Pride Corp., No. 06-cv-1249, 2006 U.S. Dist. LEXIS 87150, 2006 WL 3486739, at *2 (E.D. Pa. Nov. 30, 2006). The relevant factors under the excusable-neglect standard are: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movants; and (4) whether the movants acted in good faith. Under the excusable-neglect standard, courts examine several factors and whether they weigh in favor of excusing the untimely filing.  Id.  See e.g., Thompson v. Peak Energy Servs. USA, Inc., No. 13-0266, 2014 WL 789087, at *2 (W.D. Pa. Feb. 26, 2014) (good cause satisfied as belated opt-in plaintiffs were away from

homes for work and did not receive notice by mail, were affected by delays in postal service).[11]

Here, through no fault of his own, Plaintiff was not provided individual notice of the opt out time period as required by Rule 23(c)(2) of the Federal Rules of Civil Procedure, the 14th Amendment to the United States Constitution for due process, and the United States Supreme Court.  Even though Uber has been in active litigation with Plaintiff since January 2017, no individual opt out notice was received by Plaintiff or his counsel.  See Ex. A, Declaration of Joseph Fusco.  The email notice that was purportedly provided by Uber – through a third-party vendor – was never received by Plaintiff.  Plaintiff has searched his email inbox – including "spam" and "deleted" folders – but has not located any email regarding any class action settlement.  Id. Indeed, neither Uber nor the third-party vendor have provided a copy of the actual email sent to Plaintiff.  They have merely submitted a *sample* email and a tracking number to show it was sent, but nothing to show it was received.  See Dkt. 24-13

It was not until counsel for Plaintiff received a phone call on or around September 12, 2018 (just prior to Uber filing the instant Motion and well after the opt-out period) that Plaintiff learned he was purportedly subject to the release in the McKnight Settlement.  See Ex. B, Declaration of Matthew A. Luber, Esq.  Counsel for Plaintiff immediately interviewed his client and contacted class-counsel to informed him of the matter, advising that Plaintiff never received any email notice regarding any class action settlement.  Counsel for Plaintiff advised he intended to file a motion with the Northern District of California regarding the lack of notice, to request a ruling that Plaintiff's claims are not subject to the McKnight Settlement release, and, in the alternative, to request additional time to opt out under these circumstances.  See Luber Decl. ¶¶ 21-24

---

[11] Moreover, Rule 23(d) of the Federal Rules of Civil Procedure "allows a court to enter orders managing a class action." In re Prudential Ins. Co. of America Sales Practices Litigation, 177 F.R.D. 216, 237 (D.N.J 1997). "Such orders would include those enlarging the time to opt out of the class." Id.

In sum,  it would be a violation of Plaintiff's due process rights to force him to be subject to a settlement (i) that has not been through the rigors of final approval, (ii) where his claims fall outside of the class period and are expressly excluded by the release, (iii) where he never received individual notice of the opt out requirement, (iv) where the failure to timely opt out was not the fault of Plaintiff, (v) where the methods of communicating with Plaintiff or his counsel were known by Uber and were reasonably ascertainable by any class counsel, and (vi) where for 21 months, including briefing, mediation, and oral argument in July 2018, defense counsel never once mentioned anything about Plaintiff being included in the McKnight Settlement.[12]

### D.    The Pleadings Do Not Implicate Rule 12(f).

Rule 12(f) motions to strike matter from a pleading are disfavored. See, e.g., Miller v. Group Voyagers, Inc., 912 F. Supp. 164, 168 (E.D. Pa. 1996); North Penn Transfer, Inc., v. Victaulic Co. of Amer., 859 F. Supp. 154, 158 (E.D. Pa. 1994); Great West Life Assur. Co. v. Levithan, 834 F. Supp. 858, 864 (E.D. Pa. 1993); Charles A. Wright et al., Federal Practice and Procedure § 1380 at 647 (2d ed. 1995).  Uber's Motion is no different and should be rejected for several reasons.

*First*, courts have required the moving party to demonstrate prejudice in order to justify an order to strike matter from a pleading. See, id.  Uber has not alleged any prejudice, other than to generally say that Plaintiff attempts to "poison the jury."  Uber Mem. of Law at 22-25.  But many of the cited allegations were included within Plaintiff's original complaint and they are backed by publicly available sources, including public statements from Uber's representatives.  Further, if

---

[12] Alternatively, the Court should defer consideration of Uber's Motion until Plaintiff has the opportunity to obtain limited discovery relating to the Settlement or until the Northern District of California rules upon Plaintiff's motion to opt-out.  Discovery of Uber's negotiations and understanding of the terms of the Settlement Agreement may be necessary.

this action proceeds to trial, the pleadings will not be presented to a jury (and the jury will undoubtedly be instructed to not conduct outside research).

*Second*, "redundant, immaterial, impertinent or scandalous" material may be stricken when the allegations are so unrelated to plaintiff's claims as to be "unworthy of any consideration." In re Catanella and E.F. Hutton and Co., 583 F.Supp. 1388, 1400 (E.D.Pa. 1984). Content is immaterial when it "has no essential or important relationship to the claim for relief." Donnelly v. Commonwealth Financial Systems, 2008 U.S.Dist. LEXIS 28604 -30- (M.D.Pa. Mar. 20, 2008). Content is impertinent when it does not pertain to the issues raised in the complaint. Id. (scandalous material "improperly casts a derogatory light on someone, most typically on a party to the action.")

The veracity of Plaintiffs' allegations cannot be tested by the pending motion wherein all well-pleaded facts must be accepted as true.  Uber seeks to strike more than 50 allegations within in the Amended Complaint that appropriately summarize Plaintiff's allegations against *all* Defendants, that fairly and accurately recount facts relevant to the present case, including the assault, and which directly relate to Uber's alleged intentionally false advertising regarding safety and screening, including Uber's motivations and intent to do so.  Everything that Plaintiff alleges in the Amended Complaint is relevant to the subject matter of this lawsuit, including the allegations pertaining to Uber's business model (designating drivers as independent contractors while disclaiming all liability) and attempts to fight legislation on additional driver screening through lobbying (while telling consumers the exact opposite via marketing efforts).  No matter how the language may vilify Uber, it is not "scandalous" within the meaning of the cited rule unless it is irrelevant.   There is nothing "immaterial," "impertinent," or "redundant" about Plaintiff's Amended Complaint.

V.    <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny

Uber's Motion in its entirety.

Dated: October 12, 2018

/s/ *Matthew A. Luber*
Matthew A. Luber, Esq.
PA ID # 309323
R. Armen McOmber, Esq
Admitted *pro hac vice*
Christian V. McOmber, Esq.
Admitted *pro hac vice*
McOMBER & McOMBER, P.C.
30 S. Maple Avenue
Marlton, NJ 08053
Email: mal@njlegal.com
Phone: 856-985-9800
Fax:  732-530-8545
*Attorney for Plaintiff Joseph Fusco*